IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PAUL MCDONALD                            *
          Plaintiff,
      v.                            * CIVIL ACTION NO. PJM-06-968

LT. R. FRIEND, et al.                    *
          Defendants.
                      ***

## MEMORANDUM OPINION

I.    Background

This is a 42 U.S.C. § 1983 prisoner civil rights action which was originally received for filing on April 11, 2005, in letter form, raising claims of interference with Plaintiff's legal certified mail. Plaintiff alleges that officers at the Western Correctional Institution ("WCI") were opening up his legal mail, reading it, and then either destroying it or returning it to Plaintiff. He claims that the only manner in which he can send out his legal letters is for this Court to send him "a legal document stating that I am allowed (for my records of acceptance from the courts) to send all or any legal document to any government appointed official certified and or regeristered [sic] mail."[1] Paper No. 1. In his Supplemental Complaint, Plaintiff presents a veritable laundry list of complaints. Paper No. 3. His claims primarily relate to the refusal to send his outgoing mail by certified delivery, the opening of his mail, and the denial of writing materials. *Id*. He further states that he was subject to harassment as a result of the administrative remedies ("ARPs") he filed on a number of WCI officers.[2] *Id*. Plaintiff also complains he was denied medical treatment for his complaints

---

[1]    On June 30, 2006, the Court denied Plaintiff's request for a written court statement that he be provided the use of "certified mail whenever [he's] contacting any legal representative." Paper No. 14.

[2]    Plaintiff complains that: (1) WCI officers attempted to place him in a cell with a problematic inmate; (2) his glasses were given back to him in a broken and scratched state; (3) his property, *e.g.*, legal materials, clothing, and photographs, is missing; (4) he was verbally threatened and assaulted by Officer

of head, back, stomach, shoulder, and neck pain and blurred vision.  Paper No. 3.   He further asserts that he was subject to excessive force on six separate occasions from November of 2005 to March of 2006, but provides no particulars regarding those incidents.[3]

II.   Dispositive Filings

Defendants Galley, Tichnell, Friend, Perry, Shimko, Jacobs, and Loibel filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, which shall be construed as a summary judgment motion.  Paper No. 39.  Plaintiff has filed his responses thereto.   Paper Nos. 42 & 44.  The case is ready for the Court's consideration.  Oral hearing is not necessary.  See Local Rule 105.6. (D. Md. 2004).

III.   Standard of Review

Summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens*

---

Shimko;  (5) he was denied showers for a week and provided no recreation; and (6) he was removed from first tier or "flats" housing despite medical papers authorizing him to be on the ground floor.  Paper No. 3.

[3]   Within the body of his Supplemental Complaint Plaintiff complains that he was made to strip naked, placed into handcuffs and subject to verbal threats of harm and spitting, and was grabbed about the throat by Officer Shimko.  Paper No. 3.  In a second Supplemental Complaint, Plaintiff alleges that on March 17 and March 18, 2006, he was subject to excessive force when Sgt. Perry forced him to climb the stairs to the upper floor by threatening him with pepper mace and a physical beating.  Paper No. 12.  He also claims that on February 28, 2006, Sgt. Perry and Lt. Friend threatened to spray him with pepper mace and to "whip my ass" if he did not accept a trouble-maker as a cell mate.  *Id.*

*v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950).  The moving party bears the burden of showing that there is no genuine issue of material fact.  *See* Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the Court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  "[A] complete

failure of proof concerning an essential element...necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence.  *See Anderson*, 477 U.S. at 256.

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact and the moving party is plainly entitled to judgment in its favor as a matter of law.    In *Anderson*, the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*., 477 U.S. at 249 (1986).   A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

3

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla"of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252.

This Court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D. Md. 2001) (citation omitted). Indeed, this Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

IV.     Analysis

According to Defendants, Plaintiff was transferred to WCI from the Roxbury Correctional Institution ("RCI") on disciplinary segregation status on July 8, 2005. Paper No. 39, Ex. 1. Their record shows that from November of 2005 to December of 2005, Plaintiff received several infractions for using profanity when communicating to his case management specialist, writing "inappropriate Informal Complaint Forms," and refusing to submit to PPD testing. *Id.*, Exs. 3-5. He was found guilty of institutional infractions and sanctioned with disciplinary segregation. Because Plaintiff refused to submit to tuberculin testing, he was moved to a Special Observation Housing ("SOH") area on "medical assignment", where he remained until February 21, 2006. Paper No. 39, Exs. 1 & 6. On February 22, 2006, Plaintiff cut himself with a razor. He was taken to a property area and his property was inventoried by Officer Shimko while he was placed in a holding

cell so that his cuts could be treated by medical personnel.  Paper No. 39,  Ex. 8.  As officers could only find one-half of the razor, Plaintiff was strip searched and he was asked to remove and surrender his eyeglasses because medical staff did not want him to possess anything that he could use to harm himself.  *Id.*  Defendants state that Plaintiff became angry and threw the eyeglasses, breaking them.  *Id.*

Defendants state that Plaintiff received an infraction on February 28, 2006, for refusing to allow officers to place another inmate in the cell with him. *Id.*, Ex. 9.  He was found guilty and sanctioned with additional disciplinary segregation time.  *Id.*  Defendants maintain that Plaintiff was a constant housing problem.  *Id.*, Exs.10 & 11.

On March 5, 2006, Plaintiff received another infraction for threatening to kill Officer Shimko and his family, and was found guilty and sanctioned with 150 days segregation.  *Id.*, Ex. 12.   On March 17, 2006, he received an infraction and was subsequently sanctioned for making a sexual assault threat against Officer Shimko's son.  *Id.*, Exs. 1 & 13.  The following date Plaintiff called an officer to his cell and stated that he was going to hang himself.  *Id.*, Ex. 14.  He stood on a toilet and tied his orange jumpsuit around his neck.  *Id.*   On May 1, 2006, an administrative decision was made to transfer Plaintiff to RCI.  *Id.*, Exs. 15-16.  He was transferred to RCI the following day and remained at that facility until October 20, 2006, when he was transferred to the Maryland Correctional Institution in Hagerstown, Maryland ("MCI-H").[4]  *Id.*, Ex. 17.  For his part, Plaintiff accuses the Office of the Attorney General as being accessories after the fact as to Defendants wrongdoing and claims that counsel has no personal knowledge of Defendants' actions and has

---

[4]        According to the case record, Plaintiff has since been released from Division of Correction confinement.

included hearsay commentary in Defendants' response.   Paper No. 42.   Plaintiff further charges Defendants with fabricating their stories, demands that they submit to a "sodium Pentothal" administered polygraph test, and requests that the Court summon all Maryland prisoners at WCI and MCI-H as his witnesses.  Paper No. 42.   He maintains that he has set out valid claims of excessive force and access-to-courts deserving of a jury trial.  *Id*.  Plaintiff further argues that Defendants intentionally broke his eyeglasses and destroyed his papers.  *Id*.   In addition, he alleges that: (1) his Fourth Amendment rights were violated when material was removed from his cell; (2) Defendants' allegations are false and rely on hearsay statements; and (3) he has been experiencing medical and psychological problems as a result of Defendants' mistreatment.  Paper No. 44

With the arguments and record submitted by the parties in mind, the Court shall analyze Plaintiff's claims seriatim.

**Excessive Force**

A claim of excessive force raised by a prison inmate against a correctional officer, such as that alleged in the case *sub judice*, involves analysis of both objective and subjective elements.  *See Stanley v. Hejirika*, 134 F.3d 629, 634 (4th Cir. 1998); *Williams v. Benjamin*, 77 F.3d 756, 760 (4th Cir. 1996).   The core judicial inquiry when analyzing the subjective element is to review "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312 (1986)).   The objective element is analyzed to determine whether the officers' actions were harmful enough to offend contemporary standards of decency.  *See Hudson*, 503 U.S. at 8. Factors which are pertinent to this inquiry include the extent of injuries suffered by the inmate, the need for the application of force, the relationship between the need for force and the amount of force

used, the threat reasonably perceived by prison staff, and any efforts on the part of staff to temper the severity of their response. *See Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 321. While the prisoner's injury need not be significant to violate the Eighth Amendment, something more than *de minimis* injury is required in order to prove that excessive force was used. *See Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994) (en banc) (generally, no Eighth Amendment excessive force claim exists where any injury sustained by the plaintiff is *de minimis* and the force is not of a source "repugnant to the conscience of mankind").[5]

Defendants Shimko, Perry, and Friend deny under oath that they used excessive force against Plaintiff or that they witnessed any other officers using excessive force against Plaintiff. The Court finds that aside from Plaintiff's limited factual claims and legal conclusions, he has failed to set out an Eighth Amendment claim of excessive force and resulting significant injury.[6] Defendants are entitled to judgment as to this claim.

**Retaliation**

Retaliation against an inmate for the exercise of a constitutional right states a claim under 42 U.S.C. § 1983. *See American Civ. Liberties Union v. Wicomico County*, 999 F. 2d 780, 784-86 (4th Cir. 1993). The inmate alleging retaliation "[b]ears the burden of showing that the conduct at

---

[5]     When determining whether injuries suffered by an inmate at the hands of prison officers are *de minimis*, a court should consider: (1) the context in which the injuries were sustained, *i.e.,* was there a disturbance which required the use of force; (2) did the inmate seek medical care; (3) were any injuries documented in the medical records generated shortly after the incident; and (4) are the documented injuries consistent with the prisoner's allegations of excessive force or are they more consistent with the application of the amount of force necessary under the circumstances of the particular incident. *See Taylor v. McDuffie*, 155 F.3d 479, 484 (4th Cir. 1998); *Stanley v. Hejirika*, 134 F.3d at 634; *Riley v. Dorton*, 115 F.3d 1159, 1168 (4th Cir.); and *Norman*, 25 F.3d at 1264.

[6]     In his second opposition Plaintiff claims that since the "attacks" on his life, he is experiencing "memory loss/setbacks."

issue was constitutionally protected and that the protected conduct was a substantial motivating fact in the prison officials' decision...." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). "'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" *Gill v. Mooney*, 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).

Plaintiff states that Defendants' actions were retaliatory in nature for his filing of administrative remedies. His allegations are conclusory in nature and are insufficient to state a claim.

**Medical Care**

A prisoner presenting a denial of medical care claim in violation of the Eighth Amendment must prove two essential elements. First, he must satisfy the "objective" component by illustrating a serious medical condition. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). If this first element is satisfied, the prisoner must then prove the subjective component of the Eighth Amendment standard by showing deliberate indifference on the part of prison officials or health care personnel. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (holding that claims alleging inadequate medical care are subject to the "deliberate indifference" standard outlined in *Estelle*, 429 U.S. at 105-06). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Medical personnel "must both be aware of facts from which the inference could be drawn

that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id.* at 837.

Plaintiff complains that despite a medical order that he be housed on the flats, Defendants required him to go up and down stairs.  By affidavit, Officer Shimko denies being aware of any medical restriction involving Plaintiff.  In addition, Lt. Perry does not recall any medical restriction for Plaintiff.  Finally, Lt. Friend affirms that he does not recall seeing a medical order stating that Plaintiff needed to be housed on a bottom tier, but notes that Plaintiff made the request and that every effort was made to accommodate the request when it was possible to house him on a bottom tier.  Defendants state, however, that it was not their fault that Plaintiff had to be housed on SOH, thus requiring him to be escorted up and down stairs from a housing unit to SOH.[7]  Based upon the verified exhibits presented to the Court, the undersigned finds that Plaintiff has failed to establish that Defendants were deliberately indifferent to his medical needs.

**Housing Assignments and Prison Transfers**

Plaintiff complains that Defendants attempted to house him with violent inmates and transferred him to RCI as a retaliatory measure.  Defendants deny that they forced Plaintiff to be housed with inmates with violent tendencies.  They state that Plaintiff was cited for refusing to allow another inmate to be placed in his cell and was moved to a "contingency" or temporary holding cell. They note that while housed at WCI Plaintiff twice asked to be assigned to general population. Defendants correctly observe that a transfer from one institution to another does not create a claim

---

[7]    In his first Supplemental Complaint, Plaintiff includes a scant allegations that he was denied medical treatment for his complaints of head, back, stomach, shoulder, and neck pain and blurred vision.  In his second Opposition, he claims that he is in severe head, back, and leg pain and has "a loud ringing" in his left ear for which he did inform medical staff.  There is no showing, however, that these medical problems are serious in nature and that Defendants, all non-medical personnel, were personally involved in the alleged denial of treatment.  In any event, these claims are substantively addressed in *McDonald v. Sowers, et al.*, Civil Action No. PJM-06-2357, *et seq.*

of constitutional magnitude.  *See Montayne v. Haymes*, 427 U.S. 236, 243 (1976); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976); *Paoli v. Lally*, 812 F.2d 1489, 1493 (4th Cir. 1987).  A liberty interest may be created when state action imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Where, as here, Plaintiff has failed to demonstrate that the conditions of his assignment to RCI were significantly more onerous than those at WCI, a constitutional deprivation has not been demonstrated.

### Access to Courts

Inmates are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977); *Hudspeth v. Figgins*, 584 F.2d 1347 (4th Cir. 1978).  In *Lewis v. Casey*, 518 U.S. 343 (1996),  the Supreme Court clarified the *Bounds* decision by finding that a deprivation of an inmate's right of access to the courts is actionable, but only where the inmate is able to demonstrate actual injury from such deprivation.  *Id*. at 349.  The actual injury requirement, however, is not satisfied by just any type of frustrated legal claim.  *Id*. at 353.  Rather, the *Lewis* Court concluded that *Bounds v. Smith*, *supra*, stood essentially for the proposition that inmates are not guaranteed the ability to litigate every imaginable claim they can perceive, but that they be provided the tools necessary "in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement."  *Id*. at 355.

Plaintiff claims that Defendants tampered with his legal mail and informed him they would not send out his legal mail by certified delivery.  He also intimates that he was not provided

sufficient writing materials.   Defendants Perry, Friend and Shimko affirm by declaration that they did not throw away Plaintiff's mail or destroy his legal papers and did not interfere with his access to the courts.   Further, Defendant Perry advised Plaintiff in writing as to the proper procedure for obtaining writing materials.  Defendants also state they informed Plaintiff as to what correspondence qualified to be sent out as legal "certified" mail for indigent inmates, *e.g.*, mail addressed to a court or to an attorney pertaining to a specific case, and that mail to prison officials did not meet those requirements.

The undersigned concludes that Plaintiff has failed to bring forth information, through affidavit and exhibits, to suggest that he suffered harm due to the alleged actions or inactions of Defendants.   Indeed, the record of this Court demonstrates that he was able to file numerous pleadings in this and other federal cases.  Defendants are entitled to judgment as to this claim.[8]

**Property**

Plaintiff complains that his property was lost or destroyed by Defendants.  Defendant Shimko denies breaking Plaintiff's glasses and affirms that it was Plaintiff who broke the eyeglasses in a fit of pique.  Plaintiff disputes this claim.  Defendants further maintain that Plaintiff was advised that while on disciplinary segregation he was in possession of all allowable property.   In any event, Plaintiff's claim does not set out a colorable claim in that any allegation that property was destroyed through the negligent or intentional action of correctional officers does not violate due process if post-deprivation remedies are available.  *See Parratt v. Taylor*, 451 U.S. 527, 542-43 (1981), overruled on other grounds by *Daniel v. Williams*, 474 U.S. 327 (1986); *see also Hudson v. Palmer*,

---

[8]      Plaintiff has failed to demonstrate supervisory liability on the part of Defendants Galley, Tichnell, or Jacobs.   *See Shaw v. Shroud*, 13 F.3d 791, 799 (4th Cir. 1994).

468 U.S. 517, 533 (1984) (rejecting procedural due process claim for alleged intentional deprivation of property by state employees where a meaningful post-deprivation remedy for the loss was available).   As a Division of Correction inmate, Plaintiff's access to the administrative remedy process satisfies the post-deprivation requirements under the *Paratt/Hudson* doctrine.

VI.  Conclusion

For the aforementioned reasons, Defendants' Motion for Summary Judgment shall be granted.[9]  A separate Order follows.


Date:   6/28/07                                      /s/
                                        PETER J. MESSITTE
                                        UNITED STATES DISTRICT JUDGE

---

[9]      While Plaintiff's Supplemental Complaint listed Assistant Warden Murphy, Major Mellott, Captain Bishop, former Secretary Saar, and former Commissioner Sizer as Defendants, no specific allegations were raised against these parties.   Consequently, the case did not proceed as to these individuals.  *See* Paper No. 6.  Major Mellott, however, remains listed as an active Defendant on the civil docket.  The case shall be dismissed as to Mellott.